**HERFF MOTOR CO. v. McCABE, Collector of Internal Revenue.**

No. 2684.

District Court, M. D. Tennessee, Nashville Division.

Nov. 17, 1939.

1012

F. E. Hagler and Leo Goodman, both of Memphis, Tenn., for Motor Co.

A. O. Denning, of Nashville, Tenn., and R. G. Draper, of Memphis, Tenn., Asst. U. S. Attys., for the Government.

DAVIES, District Judge.

It appears from the facts in this case, and the Court so finds, that prior to the year 1931 Mr. Herbert Herff and Mr. Joseph Lewis, of Memphis, Tennessee, had become associated in business, first with the Security Bond and Mortgage Company, which was liquidated, and that during this time they purchased the assets of the bankrupt concern, Doyle Motor Company, which was engaged in the automobile business in Memphis, Tennessee. That they continued to manage the affairs of this Company until January 1932, at which time they procured a charter from the State of Tennessee and incorporated their business under the name of the Herff Motor Company; that proceedings relative to the incorporation of this business were begun the latter part of the year 1931, and continued until the Herff Motor Company was organized in January 1932, contemplating the or-ganization of this Company, and the incorporation of the business, the stock in the new corporation to be owned by Mr. Joseph Lewis and Mr. Herbert Herff, or his nominee; that accordingly a corporation was organized, and approximately $40,-000 of the authorized capital stock was issued at that time, in proportions of 20% of the amount to Mr. Lewis, for which certificates of stock were issued to him, and 80% of that amount to Mr. Herff, for which certificates of stock were issued to his wife at his direction. Thereupon, contemplating the organization of this corporation, Mr. Herff and Mr. Lewis, who were both to devote their entire time and attention to the affairs of the corporation, entered into a contract by and between each other and the corporation, wherein the corporation would employ Mr. Herff on the basis of a salary of $700 per month and, in addition thereto, an amount equal to $66\frac{2}{3}\%$ of its net earnings over and above $2,000 and up to a minimum amount of net earnings of $17,000.

A similar contract was entered into by and between the Herff Motor Company and Mr. Herff and Mr. Joseph Lewis, wherein Joseph Lewis would be employed by the Herff Motor Company on a salary of $350 per month and, in addition thereto, an amount equal to $33\frac{1}{3}\%$ of the net earnings of the Company over and above $2,-000, and up to a minimum amount of net earnings of $17,000. In both of said contracts it was expressly provided that the compensation of each one of these gentlemen could not be increased without the written consent of the other. It was further provided that the reference to the net income in said contracts was not to be construed to give the employee any interest in the net profits, as such, but was used as a basis for the purpose of measuring the additional compensation to be paid by the Corporation to the employee, of course, in contemplation of the fact that the company might be successful and make money out of its business by reason of the experience and the industry and ability of these employees, who were to give their active management to the affairs of the Company. Particularly in view of the fact that this was a new business, and that it did not have any financial history which would justify the payment of large salaries at that time, in fact, the financial history of the Company showed that it had just been through bankruptcy, it was stated in the contract that the business was new and untried, and that as a part of the business policy the fixed

overhead expenses should be held down as much as reasonably possible.

Subsequent to the execution of these contracts and the active entrance into the business field by this corporation, and after apparently successful management, both contracts were amended to the effect that Mr. Lewis' salary was increased from $350 per month to $500 per month, as a fixed salary, and Mr. Herff's salary was increased from $700 per month to $1,000 per month, as a regular salary. There was no change made at that time as to any additional salary representing any amounts due either of these gentlemen by reason of the increased earnings of the corporation.

■ This contract was entered into at the beginning of the year 1935, which is the year in question at this time as to the payment of income tax. The income tax return of the Herff Motor Company for the year 1934 shows that the Company made a net profit, or had a net income for income tax purposes for that year of $30,171.33, which was evidence of the fact that the Company had had good business during that year. It is further shown that the Company had a net income of approximately $51,000 for the year 1935, which, according to all witnesses in this case, was an exceedingly good business for that year. Some of the competitors of the Herff Motor Company during that year had lost money, and others had made only a small amount. In fact, one company in particular did almost the same volume of business that the Herff Motor Company did, and made only a net profit of about $700. It was generally conceded, not only by the competitors of the Herff Motor Company engaged in a similar line of business, selling similar makes of automobiles, but also by officials of a large credit concern dealing in automobile paper, that the year 1935 was a hard year for the automobile business. Being generally conceded by those who were in position to know about it, there must be some reason why the Herff Motor Company should have shown a profit for the year 1935 and the year 1934, and in view of the testimony that has been introduced in this case the Court finds that that profit was due to the business acumen and industry of Mr. Herff and Mr. Lewis. There is no other explanation of it from this record. By reason of that fact, and the further fact that the total amount of the salaries paid to Messrs. Herff and Lewis as executives of the Herff Motor Company is not out of line with the salaries paid by the Union Chevrolet Company, Chip Barwick Chevrolet Company, and other dealers in Memphis, doing practically the same amount of business, the Court is of the opinion that the salaries of $22,000 and $11,000 claimed by Messrs. Herff and Lewis for the year 1935, which includes the bonus paid to them under the contract which the Court has mentioned in its opinion, is fair and reasonable compensation for income tax purposes, fair and reasonable deductions of those amounts.

The Court finds that the services that Messrs. Herff and Lewis rendered to the Herff Motor Company were valuable, that they were rendered in due course of business, and that these payments of $22,000 and $11,000 to Messrs. Herff and Lewis respectively amounted to compensation for their personal services in the management of the business, and that their services were necessary to the management of the business, and resulted in benefit to the business, and that the respective salaries should have been allowed as deduction for income tax purposes, as a business expense.

Now as to the question of the relations of Messrs. Herff and Lewis with the Herff Motor Company wherein Messrs. Herff and Lewis, on or about the first day of January 1935, formed a partnership to do business, presumably under the trade name and style of Herff and Lewis, although the Court finds that nowhere in any of the partnership agreements is the name of the partnership expressly agreed upon, which partnership on or about the first day of January 1935, entered into a contract with the Herff Motor Company, which recites that there are two ways in which the automobile paper of the Herff Motor Company might be handled with the Finance Company—under the plan of the Company endorsing or guaranteeing all paper sold, and under another plan of the Company passing the paper to the Finance Company without recourse, and further reciting that if the Company endorsed or guaranteed the paper there would either be a gain or loss under such an arrangement as compared to a financial arrangement with the Finance Company where the paper was transferred to the Finance Company without recourse; and further reciting that the Company was desirous of relieving itself of all liability upon said paper when it has passed same to the Finance Company, thereupon the Herff Motor Company attempted to agree with the partnership of Herff & Lewis that on all paper which the Herff Motor Com-

pany transferred to a Finance Company that the partnership of Herff & Lewis would receive from the Finance Company all moneys due to the Herff Motor Company other than the initial purchase price of the paper—really contemplating rebates; and that, in consideration of the partnership of Herff & Lewis receiving the moneys, except the initial purchase price of the paper, the partnership of Herff & Lewis agreed to hold the Herff Motor Company free from any loss on any paper negotiated to a Finance Company, and that in the event the setup on said paper was insufficient to pay the loss thereon, the partnership of Herff and Lewis would make good the loss to the Herff Motor Company, and that during the year 1935 there came into the hands of the partnership, Herff & Lewis, from the Commercial Credit Company, representing rebates and other moneys received by the Herff Motor Company from the Finance Company, other than the initial purchase price of the paper, the sum of $13,528.82, and this amount of $13,528.82 was reported by the partnership of Herff & Lewis in its partnership income tax return for the year 1935.

The Court finds that while it is recited in the agreement between the Herff Motor Company and Herbert Herff and Joseph Lewis that the Herff Motor Company was desirous of relieving itself of all liability upon the paper that was negotiated to the Finance Company, as a matter of fact, it was not relieved of any liability on this paper, and that its liability to the Finance Company remained the same, notwithstanding the execution of this contract, although the contract in itself was a valid agreement wherein the Herff Motor Company could have held the partnership of Herff & Lewis liable in the event it had suffered any loss. It does not appear that this was of any benefit to the corporation as it is not shown in the proof that Messrs. Herff & Lewis were at all times sufficiently solvent to protect the corporation under said contract. The Herff Motor Company did not receive any other benefits by reason of the execution of this contract, and that the partnership of Herff & Lewis did not actually do any business for the year 1935, did not have a bank account and did not keep any partnership books or records, other than a record of remittances received from the Herff Motor Company representing rebates from the Commercial Credit Company; that these rebates which were paid by the Commercial Credit Company to the Herff Motor Company were recognized by the Herff Motor Company under its contract, as the property of the partnership of Herff & Lewis, and in recognition of the ownership of said rebates, transferred and delivered said funds to the partnership of Herff & Lewis as they were received from the Commercial Credit Company, and that no mention was made on the books of these rebates as reflecting the ownership of said rebates as being the property of the Herff Motor Company.

The Court finds that this contract was entered into at approximately the same time that the contracts of Messrs. Herff & Lewis with the Herff Motor Company relative to their compensation being increased, and the Court is of the opinion that the contracts of Messrs. Herff & Lewis relative to their compensation were amended and their compensation increased in the beginning of the year 1935, in the expectation of a larger business being done by the Company in the year 1935, and the Court thinks that the increase was proper.

The Court is of the opinion that the contract entered into by and between the partnership of Herff & Lewis and the Herff Motor Company was also made in anticipation of increased business of the Herff Motor Company for the year 1935, and was a method adopted by the Herff Motor Company and Herff & Lewis as being a proper method of avoidance of income tax.

The Court is of the opinion that such was the primary purpose of the execution of the contract in question between the Herff Motor Company and Herbert Herff and Joseph Lewis, of the partnership of Herff & Lewis, and the Court finds that in executing said contract Herbert Herff and Joseph Lewis executed the contract under the belief that they had a valid and legal right to do so, and that while the purpose of the contract was for the avoidance of tax, there was no fraudulent purpose in the minds of either Herbert Herff or Joseph Lewis in the execution of this contract; that these gentlemen were acting under legal advice, and they were only doing what they were advised, and what they thought they fully had the right to do, and that, although the Court disagrees with them as to the legal conclusion, and as to the legal sufficiency of their acts, yet there is no aspersion cast upon their intention by reason of these acts.

The Court is of the opinion that the sum of $13,528.82, received by the partnership of Herbert Herff and Joseph Lewis from the Commercial Credit Company, through the agency of the Herff Motor Company, was, after all, the property of the Herff Motor Company, and that as such it should have been included in the income tax of the Herff Motor Company, for the year 1935 for tax purposes.

The bonus of $15,000 actually paid Messrs. Herff and Lewis as part of their compensation should have been allowed as a deduction by the Commissioner. The tax penalty of $2,288.20, by reason of fraud, should not have been assessed. The $13,528.82 received by the partnership of Herff & Lewis should have been included in the corporation's taxable income for the year 1935.

The Court further finds there was probable cause for the action of the Collector in collecting the tax sued for.

The motion of the plaintiff is therefore overruled, except as in accordance with this opinion and finding of the Court, and to that extent, is allowed. A decree will be entered accordingly.

Mr. Hamilton: If I may do so with propriety, I would like to request that you make some finding as to the legality of the contracts of employment whereby all income in excess of $2,000 and up to $17,000 could be contracted by the corporation so as to escape a net income of more than a minimum of $2,000.

The Court: That is a legal question upon which the Court feels it is not necessary to pass in the decision of this case. The Court finds, as a matter of fact, that such was not the purpose of the execution of these contracts; that the contracts merely established a basis for the determination of the amount of salaries to be paid these officers and were not executed for the purpose of taking all the net earnings of the corporation between $2,000 and $17,000. The proof shows that it was customary for companies engaged in similar business to increase proportionately the salaries of its executives in prosperous years. These contracts were executed in 1931. No question was ever made of them until 1935, when the corporation began to make some money.

The Court finds as a fact that the amounts paid to Messrs. Herff and Lewis as salaries for 1935 were reasonable, and particularly so in view of the fact that the decision of the Court in this case will result in the increase of the net earnings of Herff Motor Company for 1935 in the amount of $13,528.82.